IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**TONTRENCE COLISTA BRAXTON,**

    Plaintiff,

vs.                                Case No. 4:04cv341-RH/WCS

**CLAYTON FALLIS,**

    Defendant.

_____/


## REPORT AND RECOMMENDATION

Defendant has moved for summary judgment. Docs. 27 (motion) and 28 (memorandum). Plaintiff filed a response. Docs. 29 and 30 (corrected). Plaintiff was advised of her obligations in filing a response to a motion for summary judgment, and a date was set for taking the motion under advisement. Doc. 31.

Plaintiff filed another response. Doc. 33. Plaintiff was given further instruction as to how to respond to a motion for summary judgment. Doc. 36. Plaintiff filed a statement of undisputed facts, doc. 38, and an affidavit, doc. 39. Finally, there are exhibits associated with docket entry 40 but not scanned into the record. Defendant's motion for summary judgment is ready for the court's ruling.

**Allegations of the Fifth Amended Complaint, Doc. 15**

Plaintiff alleges that on June 2, 2003, she was at the Greyhound Bus Station in Tallahassee, Florida, to purchase a ticket. Doc. 15, p. 3A. She alleges that she asked a person standing near an inaccessible entrance to direct her to an entrance so that she could enter the building. *Id.* A Greyhound security officer approached, assumed incorrectly that she was loitering, and told her that loitering was not allowed. *Id.* She states that she then found the entrance, and when she entered, the security officer made a "perjured" statement to the Tallahassee Police Department that she had been told to leave. *Id.*

Plaintiff alleges that Tallahassee Police Officer Clayton Fallis, the Defendant, answered the call and approached her in the bus station in the company of the security officer. *Id.*, p. 3B. Officer Fallis demanded that Plaintiff go with him outside, where he questioned her. *Id.* Plaintiff asserts that she tried to explain to Officer Fallis that there had been a misunderstanding, but he arrested her. *Id.* She states that Officer Fallis gave her three seconds to leave, and when she did not leave, he arrested her. *Id.*, p. 3C. He did so by using a leg sweep to "slam her on the pavement and while she was down he put cuffs" on her. *Id.*

Plaintiff alleges that she was charged with violating FLA. STAT. §§ 810.092B [sic] and 843.02, and after six days of trial, was acquitted. *Id.*, p. 3D. Plaintiff contends that Defendant violated her constitutional rights under the Fourth Amendment, the Fourteenth and Fifth Amendment (due process), the Eighth Amendment (cruel and unusual punishment), and rights under the Florida Constitution.

**Undisputed Facts**

Defendant failed to file a statement of facts as to which Defendant contends there is no dispute as required by N.D. FLA. LOCAL RULE 56.1(A). The material evidence, however, is rather uncomplicated.

Defendant Fallis states in his affidavit that on July 2, 2003, he was assigned to uniform patrol. Doc. 28, Exhibit A, ¶ 3. At about 2:00 p.m., he was dispatched to the Greyhound Bus Station "in reference to a disturbance there. Security officer Bob Mondesir had called the police department advising that the plaintiff was causing a disturbance inside the Greyhound Bus Terminal." *Id.*, ¶ 4. Fallis states that when he arrived at the bus station, Mondesir told him that he wanted a "trespass warning issued to plaintiff for the Greyhound Bus Station for causing a disturbance." *Id.*

Fallis avers that Plaintiff was "shouting and talking very loudly," and he asked her to step outside. *Id.*, ¶ 6. Fallis further avers that on the outside of the terminal, he told Plaintiff that Mondesir wanted a trespass warning issued to her, so he "advised plaintiff that she was being issued a trespass warning." *Id.*, ¶ 7. He states that he ordered Plaintiff to leave three separate times and each time Plaintiff refused to leave. *Id.*, ¶ 8.

Fallis avers that "at this point" he placed Plaintiff under arrest, and "asked her to place her hands behind her back but she did not comply." *Id.*, ¶ 9. When Plaintiff did not comply, Fallis grabbed her right arm to handcuff her, but she pulled away. *Id.* As she pulled away, Fallis "executed a front leg sweep."[1] *Id.*, ¶ 10. He states he continued

---

[1] Portions of paragraph 10 of this affidavit are missing from the copy which was filed electronically. It does not appear to be disputed that Plaintiff fell to the ground due to the front leg sweep and was handcuffed shortly thereafter.

Case No. 4:04cv341-RH/WCS

to order her loudly to stop resisting and to give him her arm, and after several commands, she did so and he handcuffed her.  *Id.*

Plaintiff's affidavit contains no evidence.  Doc. 39.  It contains legal argument.  Likewise, Plaintiff's statement of undisputed facts, doc. 38, does not discuss evidence or facts.  It consists entirely of legal argument.

Plaintiff's response, which does discuss factual allegations, is not under oath or under penalty of perjury.  Doc. 30.  Nonetheless, it is assumed that Plaintiff intended to the response to be under oath.[2]  The response will be consulted for Plaintiff's evidence in support of her claims.

Plaintiff admits that security officer Mondesir "*thought* that the plaintiff was loitering and for this reason, he wanted the plaintiff to be issued a trespass warning."  Doc. 39, pp. 8-9 (Plaintiff's affidavit, emphasis added).  She argues, however, that she was not loitering, that she asking for directions and intended to buy a bus ticket.  Doc. 30, pp. 4, 14.  She argues that "when she explained to the defendant that she was asking for directions because she did not know where a[n] entrance was, their [his] suspicion should have been assuaged."  *Id.*, p. 4.  Plaintiff contends that Defendant Fallis should have believed her rather than Security Officer Mondesir.  Plaintiff has not contested the evidence presented by Defendant Fallis, that when he arrived at the bus station, he saw Plaintiff shouting and talking loudly.

---

[2] The response ends: "Stated in all honesty."  It is assumed that Plaintiff was trying to make a statement under oath, and would correct the document to place it under oath if given an opportunity to do so.

Case No. 4:04cv341-RH/WCS

With respect to the excessive force claim, Plaintiff states that she was arrested "at gun point."  Doc. 30, p. 5.  Defendant has not addressed this, and it will be assumed that Defendant drew his handgun during the arrest.

**Legal Analysis**

Defendant has responded to two claims, an unlawful arrest without probable cause and use of excessive force during the arrest,[3] both in violation of the Fourth Amendment.  The facts alleged only implicate the Fourth Amendment as to both claims.  Redd v. City of Enterprise, 140 F.3d 1378, 1382 (11th Cir. 1998) ("arrest made without probable cause violates the Fourth Amendment"); Carr v. Tatangelo, 338 F.3d 1259, 1267 n. 15 (11th Cir. 2003), *citing,* Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) (excessive force by police is a Fourth Amendment claim).  Plaintiff has no Eighth Amendment or Due Process claims on these facts.

### Unlawful Arrest

"Probable cause exists if 'the facts and the circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed.'"  Madiwale v. Savaiko, 117 F.3d 1321, 1324 (11th Cir. 1997), *quoting,* United States v. Jimenez, 780 F.2d 975, 978 (11th Cir. 1986); *see also* Rankin v. Evans, 133 F.3d 1425, 1433 (11th Cir.), *cert. denied*, 119 S. Ct. 67 (1998) (probable cause determinations consider whether "a reasonable man would

---

[3] The existence of an excessive force claim is not entirely clear.  However, since Plaintiff has asserted a state law claim of assault and battery, doc. 15, p. 4, the complaint will be construed as Defendant has construed it, to include this second Fourth Amendment claim.

have believed [probable cause existed] had he known all of the facts known by the officer.").

FLA. STAT. § 810.08(1) provides: "Whoever, without being authorized, licensed, or invited, willfully enters *or remains* in any structure or conveyance, or, having been authorized, licensed, or invited, *is warned by* the owner or lessee of the premises, or by *a person authorized by the owner or lessee, to depart and refuses to do so*, commits the offense of trespass in a structure or conveyance." (Emphasis added.) The offense is a first degree misdemeanor if there is a human being in the structure at the time. FLA. STAT. § 810.08(2)(b). FLA. STAT. § 810.09 creates a similar first degree misdemeanor for willfully remaining upon property other than a structure after being ordered to leave by an authorized person or by the owner.[4] A law enforcement officer in Florida may arrest a person without a warrant when the person has committed a felony or a misdemeanor in the presence of the officer. FLA. STAT. § 901.15(1).

It is not disputed that Fallis arrived and was told by Mondesir that Plaintiff was causing a disturbance or was loitering.[5] It is also not disputed that Mondesir saw and heard Plaintiff shouting and talking loudly in the bus station. Nor has Plaintiff disputed that Mondesir asked Fallis to give Plaintiff a trespass warning, that a trespass warning was given by Fallis to Plaintiff, that Plaintiff heard the order, and she refused to obey that order and refused to leave.

---

[4] An unenclosed parking lot of a convenience store is not part of the curtilage, because not enclosed, and therefore not the subject of trespass to a structure. L.K.B. v. State, 677 So.2d 925, 926 (Fla. 5th DCA 1996). Of course, it would be the subject of trespass to property other than a structure.

[5] There is a genuine dispute of fact as to whether Plaintiff was loitering or causing a disturbance, but the fact is not material to the probable cause issue.

Therefore, Fallis had probable cause to arrest Plaintiff for trespass after warning. Seago v. State, 768 So. 2d 498 (Fla. 2d DCA 2000). In that case, the police had previously warned the defendant not to enter a neighborhood grocery store. The warning had been issued due to a prior request of the owner of the store. There was no evidence presented by the State that on the day in question, the defendant had not been given special permission by the owner to visit the store, and the court found that a judgment of acquittal should have been entered. The court pointed out, however, that the arrest was lawful, based upon probable cause to believe that the defendant had previously been warned. 768 So. 2d at 500. *See also*, State v. M.A.D., 721 So. 2d 412, 412 (Fla. 3d DCA 1998).

Plaintiff faults Fallis for choosing to believe Mondesir rather than her, but police officers must make such choices daily, on the spot, without time for much deliberation. This choice, standing alone, does not show a violation of the Fourth Amendment. If, as Plaintiff alleges, she was falsely accused of loitering or making a disturbance, and as a consequence, was ordered to leave the bus station unfairly, thereby preventing her from buying a ticket, then that is an unfortunate event. But there is no dispute that Plaintiff was ordered to leave and did not, and that plainly decides this claim in favor of Officer Fallis.

**Excessive Force**

A claim of excessive force in the course of an arrest, investigatory stop, or any other "seizure" of a free citizen is analyzed under the Fourth Amendment and its "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 1871 and n. 10, 104 L.Ed.2d 443 (1989); Hamm v. Powell, 874 F.2d 766 (11th Cir. 1989), as

modified on rehearing, 893 F.2d 293 (1989). The issue of "reasonableness" requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate theat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 109 S.Ct. at 1872.

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive force, the same standard of reasonableness applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," Johnson v. Glick, 481 F.2d [1028], at 1033 [(2d Cir.), *cert. denied*, 414 U.S. 1033 (1973)], violates the Fourth Amendment The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts, however, inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

109 S.Ct. at 1872.

It is undisputed that Plaintiff attempted to pull away as Officer Fallis tried to handcuff her. Use of a leg sweep to complete the handcuffing procedure was not excessive force, but was reasonably calculated to complete the handcuffing procedure. This use of force did not violate the Fourth Amendment.

**Conclusion**

Summary judgment should be granted in favor of Defendant. The Court should decline to consider the state law claims.

Accordingly, it is **RECOMMENDED** that Defendant's motion for summary judgment, doc. 27, be **GRANTED** as to the federal claims, that the Court decline to consider the state law claims, and that the Clerk be **DIRECTED** to enter judgment in favor of Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on October 20, 2005.


s/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**